# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

James H Anderson,

                Plaintiff,       Case No. 16-cv-12398

v.                             Judith E. Levy
                                 United States District Judge

Aramark Facility Services LLC, *et al.*,          Mag. Judge R. Steven Whalen

                Defendants.

_____/

## OPINION AND ORDER GRANTING THE ARAMARK DEFENDANTS' MOTION TO DISMISS [45], DENYING AS MOOT BEAUGARD AND BRUTON'S MOTION TO DISMISS [36], DENYING PLAINTIFF'S MOTIONS TO AMEND THE COMPLAINT [53] AND TO COMPEL DISCOVERY [61], VACATING THE ENTRY OF DEFAULT AGAINST GENERAL MOTORS FLINT ASSEMBLY [68], AND DISMISSING THIS CASE IN PART WITH AND IN PART WITHOUT PREJUDICE

This is an employment case. Plaintiff James H. Anderson alleges that defendants improperly reprimanded and terminated him from his position. Pending are defendants Tony Beaugard and Debra M. Bruton's motion to dismiss (Dkt. 36), defendants Aramark Facility Services, LLC, Tony Beaugard, Jason A. Bowe, Debra M. Bruton, Diana Curtis, and Glenn Fackler's ("the Aramark defendants") motion to

dismiss (Dkt. 45), plaintiff's fourth motion to amend his complaint (Dkt. 53), and plaintiff's motion to compel discovery. (Dkt. 61.)

The Court determines that oral argument is not required pursuant to E.D. Mich. Local R. 7.1(f)(2). For the reasons set forth below, the Aramark defendants' motion to dismiss is granted, Beaugard and Bruton's separate motion to dismiss is denied as moot, plaintiff's motions to amend his complaint and compel discovery are denied, and this case is dismissed.

## I. Background

Plaintiff initially filed suit in Genesee County Circuit Court on March 15, 2016. (Dkt. 1 at 4.) Defendants UAW Local 598, Tony Beaugard, and Debra M. Bruton timely removed the complaint on June 24, 2016. (Dkts. 1, 2.) The Aramark defendants filed a notice of consent to the removal on June 29, 2016. (Dkt. 4.) The Aramark defendants filed a motion to dismiss on June 30, 2016. (Dkt. 8.) On July 11, 2016, plaintiff filed a motion to remand the case back to state court. (Dkt. 11.) Plaintiff then filed his first motion seeking leave to amend his complaint on July 26, 2016. (Dkt. 18.) On September 6, 2016, plaintiff moved to voluntarily dismiss Count XIII of his complaint, alleging

breach of employment contract against UAW Local 598 and Aramark Facility Services. (Dkt. 23.) On September 21, 2016, the Court denied plaintiff's motions to remand and to amend the complaint, and granted the motion to dismiss Count XIII. (Dkt. 24.)

On October 3, 2016, plaintiff filed a motion to dismiss Count IX of his complaint, alleging a breach of the duty of fair representation against UAW Local 598. (Dkt. 25.) Plaintiff also filed a second motion to amend his complaint that same day, as well another motion to remand the case to state court. (Dkts. 26-28, 30.)

On October 28, Beaugard and Bruton filed a motion to dismiss the claims against them. (Dkt. 36.) On November 7, 2016, Beaugard and Bruton withdrew part of their motion to dismiss claiming that they had not been served, as Aramark Facilities Services had already accepted service on their behalf. (Dkt. 40.) On November 10, 2016, the Court granted plaintiff's motion to amend his complaint, denied his second motion to remand, and denied his motion to dismiss Count IX as moot, because the amended complaint already disposed of the count. (Dkt. 41.)

On November 25, 2016, the Aramark defendants filed a renewed motion to dismiss the complaint, including the claims against Beaugard and Bruton. (Dkt. 45.) On December 8, 2016, plaintiff filed his third motion for leave to amend his complaint (Dkts. 49-51), and on December 12, 2016, he filed a fourth motion for leave to amend with corrections to the complaint attached to the third motion. (Dkts. 53-54.)

The Aramark defendants responded to plaintiff's motion for leave to amend on December 22, 2016. (Dkt. 56.) Plaintiff responded to the Aramark defendants' motion to dismiss and replied to the response to the motion for leave to amend on January 6, 2017. (Dkt. 57.) Plaintiff filed a second response to the motion to dismiss on February 6, 2017. (Dkt. 59.) That response was untimely and a second response to a motion to dismiss is not permitted, therefore the Court will not consider it.

On March 9, 2017, the Court denied the still-pending first motion to dismiss by the Aramark defendants and plaintiff's third motion to amend. (Dkt. 60.) On March 13, 2017, plaintiff filed a motion to compel discovery. (Dkt. 61.) The Aramark defendants' motion to dismiss is fully briefed.

Plaintiff has also failed to serve defendants Bobby Banks, Kevin Woodrum, Hydro Chem, and General Motors Flint Assembly. On April 6, 2017, the Court issued an order for plaintiff to show cause why the claims against these defendants should not be dismissed for failure to serve. (Dkt. 63.) Plaintiff responded on April 17, 2017. On April 26, 2017, plaintiff requested an entry of default against General Motors Flint Assembly (Dkt. 67), and on April 28, 2017, the Clerk of Courts entered the requested default. (Dkt. 68.)

Plaintiff was employed by Aramark Facility Services, LLC, at the General Motors Flint Assembly. He was also a member of a union during his employment. The operative complaint in this case alleges that on September 9, 2015, Woodrum and Beaugard called plaintiff to the break room of his workplace to reprimand him for a no-call/no-show (not showing up to work or notifying his superiors of his absence). (Dkt. 30 at 3.) Plaintiff informed Woodrum and Beaugard that he believed he was not scheduled to work that day, and that he was not asked if he needed a union representative during the conversation. (*Id*.) He also states that Beaugard told him that he could write the word "appeal" on the back of the disciplinary form and it would likely be overturned,

which plaintiff did. (*Id.*) Plaintiff alleges that his appeal of the matter was arbitrarily and discriminatorily ignored. (*Id.*)

Plaintiff then alleges that Beaugard berated plaintiff, stating that he did not want to represent plaintiff, and accused plaintiff of lunging at him. (Dkt. 27 at 4.) Beaugard and plaintiff continued to argue, at which point security escorted plaintiff off of the premises. (*Id.*)

On September 11, 2015, plaintiff discussed the situation with Banks, who informed him that he was suspended for thirty days. (*Id.*) On September 15, 2015, plaintiff was told to be at the General Motors Flint Assembly at 9 AM, where he met with Curtis and Bruton. (*Id.*) Plaintiff asked about the status of the investigation, at which point he states Curtis spoke to him in a "derogatory and demeaning" fashion, informing him that he was required to take anger management classes and chastising him for using his radio during the confrontation with Beaugard. (*Id.* at 5.) Plaintiff alleges that he then sent letters to Curtis and Hydro Chem that were ignored. (*Id.*)

Plaintiff alleges that he returned to work on October 16, 2015, and Woodrum drove with him in a cart to meet with Banks, Bruton, Beaugard, and "a first shift supervisor accompany[ied] with two big

body guards." (*Id.*) Bruton then told plaintiff that the purpose of the meeting was to discuss an allegation that plaintiff had threated to punch an unidentified witness. (*Id.*) Banks told plaintiff that he was on his last leg as well. (*Id.* at 5-6.)

Plaintiff alleges that another employee lodged a complaint about his behavior on January 16, 2016. (*Id.* at 6.) On January 26, 2016, plaintiff had a dispute with another coworker over his boots. (*Id.*) On January 27, 2016, Woodrum and Bowe gave plaintiff a three-day disciplinary layoff pending investigation. (*Id.*) On January 28, 2016, plaintiff had a phone call with Fackler, who instructed plaintiff to write down his version of events that occurred on January 27, 2016, and to report to the Aramark Human Resources Office on February 1, 2016. (*Id.*) On February 1, 2016, plaintiff met with Fackler and Bruton, who at that point informed plaintiff that he was terminated from his job and that he would receive the findings of the investigation in the mail. (*Id.* at 7.)

Plaintiff's original complaint includes numerous exhibits that are incorporated by reference into his later amended complaints. These include Employment Action/Disciplinary Notice Forms issued on March

12, 2015, June 6, 2015, July 22, 2015, August 24, 2015, September 10, 2015, September 11, 2015, September 15, 2015, January 11, 2016, January 28, 2016, and February 1, 2016, notifying plaintiff that he violated shop rules 2 and 6 under the operative collective bargaining agreement ("CBA") and/or that he clocked into work late. (Dkt. 1 at 74-77, 86-89, 101-104, 117-118; *see also* Dkt. 38-4 (a copy of the CBA).)

Plaintiff asserts twelve counts in his complaint: 1) interference with an employment relationship against Bruton; 2) negligence against Fackler; 3) negligence against Curtis; 4) negligence against Banks; 5) negligence against Bowe; 6) negligence against Beaugard; 7) negligence against Woodrum; 8) intentional infliction of emotional distress against Aramark Facility Services; 9) negligent supervision against Aramark Facility Services; 10) negligent supervision against Hydro Chem; 11) negligent supervision against General Motors Flint Assembly; and 12) wrongful discharge against Fackler.

Plaintiff's proposed amended complaint eliminates the negligence claim against Curtis and the wrongful discharge claim against Fackler, and adds in a retaliation claim under Michigan's Employee Right to

Know and Freedom of Information Acts against Curtis. It also blacks out certain portions of previously pleaded claims.

## II.    Legal Standard

When deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.,* 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pro se complaint is entitled to a liberal construction and "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (citation omitted).

Fed. R. Civ. P. 15(a) provides that, in the case of an amendment outside of the twenty-one days after service, "a party may amend its

pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## III.  Analysis

Plaintiff's fourth proposed amended complaint abandons his third and twelfth claims:  negligence against Curtis and wrongful discharge against Fackler.  On review of the complaint and plaintiff's response to the Aramark defendants' motion to dismiss, which fails to specifically defend these claims, these two claims are dismissed.

### A. The Aramark Defendants' Motion to Dismiss

Despite Aramark Facility Services answering on their behalf, Beaugard and Bruton filed a separate motion to dismiss arguing both that plaintiff failed to state a claim and that plaintiff failed to serve them.  Beaugard and Bruton later filed a notice admitting that

Aramark Facility Services accepted service on their behalf. (Dkt. 40.) Because Aramark Facility Services accepted service on their behalf and filed a motion to dismiss on their behalf, Beaugard and Bruton's motion to dismiss is denied as moot.

It is undisputed that plaintiff was a member of a union during his employment. Plaintiff also provided extensive documentary evidence that he was repeatedly reprimanded for absenteeism, threatening or assaulting others in the workplace, and disregarding his superiors. The Aramark defendants argue that plaintiff's claims against Beaugard and Bruton, both union officials, are preempted by § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), and that all claims against all of the Aramark defendants fail to state a claim.

The claims against the Aramark defendants are: interference with an employment relationship against Bruton, negligence against Fackler, negligence against Bowe, negligence against Beaugard, intentional infliction of emotional distress against Aramark Facility Services, and negligent supervision against Aramark Facility Services.

### i. LMRA Preemption of State-Law Claims

The Aramark defendants first argue that the state-law claims against Bruton, the local union's committee chairperson, and Beaugard, a union steward, are preempted by § 301 of the LMRA. "[Section] 301 of the LMRA preempts any state-law claim arising from a breach of a collective bargaining agreement." *Smolarek v. Chrysler Corp.*, 879 F.2d 1326, 1329 (6th Cir. 1989). "Preemption under § 301 applies not only to state-law contract claims, but has been expanded to include state-law tort claims as well." *Mattis v. Massman*, 355 F.3d 902, 905 (6th Cir. 2004) (further citations omitted). Tort claims must be independent of the CBA to survive § 301 preemption. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 409-10 (1989).

> To determine whether a state-law claim is sufficiently "independent" to survive § 301 preemption, this court has adopted a two-step inquiry. First, courts must determine whether resolving the state-law claim would require interpretation of the terms of the collective bargaining agreement. If so, the claim is preempted. Second, courts must ascertain whether the rights claimed by the plaintiff were created by the collective bargaining agreement, or instead by state law. If the rights were created by the collective bargaining agreement, the claim is preempted. In short, if a state-law claim fails *either* of these two requirements, it is preempted by § 301.

*Mattis*, 355 F.3d at 906 (internal citations omitted) (emphasis in original).

The Sixth Circuit has previously analyzed whether a Michigan state-law claim for tortious interference with a business relationship, such as the claim asserted against Bruton, survives § 301 preemption. *DeCoe v. Gen. Motors Corp.*, 32 F.3d 212 (6th Cir. 1994). In Michigan, this claim requires the plaintiff to establish:

> (1) the existence of a valid business relation (not necessarily evidenced by an enforceable contract) or expectancy; (2) knowledge of the relationship or expectancy on the part of the defendant interferer; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resulting damage to the party whose relationship or expectancy has been disrupted.

*Wausau Underwriters Ins. Co. v. Vulcan Dev., Inc.*, 323 F.3d 396, 404 (6th Cir. 2002) (citing *Mich. Podiatric Med. Ass'n v. Nat'l Foot Care Program*, 175 Mich. App. 723, 736 (1989)).

Here, plaintiff asserts that Bruton, as "an employee, agent, servant [of the] union of ARAMARK [FACILITY] SERVICES" interfered with the employment relationship between him and Aramark Facility Services by, among other things, failing to conduct a proper investigation as required by the CBA. Because plaintiff's claim would

require the Court to interpret the provisions of the CBA to determine what rights he was owed and whether Bruton failed to provide him those rights during her investigation, this claim fails the first and second parts of the § 301 preemption test and is preempted. Further, plaintiff's state-law claim requires that he prove a breach of the relationship between him and his employer. Because he is required to prove a breach of a relationship governed by a CBA, this claim fails the second part of the § 301 preemption test. *DeCoe*, 32 F.3d at 218.

Despite the requirement that the Court hold plaintiff to a less stringent standard than a party represented by counsel, plaintiff has shown repeatedly via his motions to amend and arguments in response to the motion to dismiss that he intends to assert state law claims. But even under this standard of review, plaintiff's preempted state law claim is not a federal claim. Accordingly, plaintiff's claim for tortious interference with a business relationship against Bruton is dismissed.

Plaintiff's negligence claim against Beaugard is also preempted by § 301. He alleges that Beaugard had certain duties, including submission of a written and signed statement concerning the September 9, 2016 incident, and obtaining a signed statement from Woodrum,

among other duties, each of which are procedures required by the CBA in Beaugard's role as a union steward. These would all be rights guaranteed by the CBA, and would therefore be preempted under the second part of the § 301 analysis. Plaintiff's negligence claim against Beaugard is dismissed.

### ii. Negligence Claims

The Aramark defendants next argue that plaintiff has failed to state claims for negligence against Fackler, Curtis, and Bowe. Generally, plaintiff alleges that each of the three negligently performed their duties in relation to his evaluation. (Dkt. 27 at 9-14.) Plaintiff does not argue in his timely filed response to the motion to dismiss that his negligence claims should survive.

In Michigan, negligence is a tort claim requiring the plaintiff to "prove the four elements of duty, breach of that duty, causation, and damages." *Rupert v. Daggett*, 695 F.3d 417, 423 (6th Cir. 2012) (citing *Brown v. Brown*, 478 Mich. 545, 552 (2007)). The Michigan Supreme Court has "decline[d] to recognize an action in tort for negligent evaluation." *Ferrett v. Gen. Motors Corp.*, 438 Mich. 235, 236 (1991). There is "no separate and distinct duty imposed by law to evaluate or

correctly evaluate employees." *Id*. at 246. Accordingly, plaintiff's negligence claims against Fackler, Curtis, and Bowe are dismissed.

### iii. Intentional Infliction of Emotional Distress Claim

"Under Michigan law, to state a claim for intentional infliction of emotional distress, [the plaintiff] must allege extreme or outrageous conduct which, intentionally or recklessly, causes extreme emotional distress." *Garretson v. City of Madison Heights*, 407 F.3d 789, 799 (6th Cir. 2005) (citations omitted). "Liability for the intentional infliction of emotional distress has been found only where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Doe v. Mills,* 212 Mich. App. 73, 91 (1995). "Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities," and will only stand where "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Id*. (citations omitted).

Plaintiff appears to plead this claim against all defendants, but he argues that this claim is actually against the entity in charge of training, monitoring, and supervising the individual defendants. (Dkt. 27 at 18.) That entity is Aramark Facility Services. At most, plaintiff alleges that Aramark Facility Services engaged in "outrageous and shocking, threatening intimidating tactics" and failed to treat him with "common courtesy." (*Id.* at 17.) Even taking plaintiff's allegations as true, and not holding him to the stringent standards of parties represented by counsel, the facts as he has pleaded them are too vague to rise to the level of the intentional infliction of emotional distress. It is entirely unclear from the complaint what Aramark Facility Services did besides engage in unspecified "tactics" and not provide "common courtesy."

Accordingly, plaintiff's claim for intentional infliction of emotional distress is dismissed.

### iv. Negligent Supervision Claim

Plaintiff asserts that Aramark Facility Services negligently supervised some or all of its employees. Defendant argues that plaintiff has failed to state a claim because he may not bring a claim asserting a

tort based on negligence against his employer. Plaintiff did not respond to defendant's argument.

Michigan's Workers' Disability Compensation Act, M.C.L. § 418.131, "bars claims brought by employees against their employer for injuries sustained in the course of employment unless the claim is one for an intentional tort." *Downer v. Detroit Receiving Hosp.*, 191 Mich. App. 232, 235 (1991). Plaintiff's assertion of a tort based on negligence against his employer is barred by Michigan law, and must be dismissed.

## B. Plaintiff's Motion for Leave to Amend His Complaint

Plaintiff's motion to amend his complaint must be denied as futile. "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000). Plaintiff retained ten of the twelve claims from his prior complaint in his proposed amended complaint, and each of those claims must be dismissed for the reasons set forth either in the Court's analysis of the Aramark defendants' motion to dismiss or because plaintiff failed to serve the remaining

defendants.  The remaining claim is a retaliation claim brought against Curtis.  (Dkt. 54 at 24-25.)

This claim alleges that Curtis retaliated against plaintiff by wrongfully discharging him following his submission of requests for information under Michigan's Employee Right to Know and Freedom of Information Acts.  However, in his statement of facts, plaintiff states that Bruton and Fackler, not Curtis, conducted the investigation that led to his termination, and that Fackler, not Curtis, made the final decision to terminate him.  (*Id.* at 7.)  Plaintiff alleges only that Curtis ignored the letters he sent requesting information, but alleges nothing beyond a cursory legal conclusion that she committed some act constituting retaliation against him.  (*Id.* at 5.)  Even under the less stringent standard applied to pro se complaints, plaintiff has not plausibly pleaded that Curtis retaliated against him.

### C. Plaintiff's Failure to Serve Bobby Banks, Kevin Woodrum, Hydro Chem, or General Motors Flint Assembly

Plaintiff asserted the following additional claims in his complaint: negligence against Banks and Woodrum, negligent supervision against Hydro Chem, and negligent supervision against General Motors Flint

Assembly. None of those defendants have been served. On April 6, 2017, the Court issued an order requiring plaintiff to show cause why the claims against Bobby Banks, Kevin Woodrum, Hydro Chem, and General Motors Flint Assembly should not be dismissed for failure to serve those parties. (Dkt. 63.) Plaintiff responded on April 17, 2017. (Dkt. 64.)

Plaintiff states that General Motors Flint Assembly was served with the summons and complaint, and attaches a certified mail return receipt showing that the documents were delivered to the main address for the facility on May 25, 2016. (*Id.* at 6.) The receipt does not indicate whether the person who signed for the package was authorized to receive service under Mich. Ct. R. 2.105(D), which governed service on corporations at the time this case was filed in state court. The address label also did not identify an officer, registered agent, or other appropriate person to receive service under Rule 2.105(D). Sending a summons and a copy of the complaint by registered mail to the corporation is only proper in certain limited conditions, none of which plaintiff has shown to apply here. Mich. Ct. R. 2.105(D)(4)(a)-(c).

On April 28, 2017, the Clerk of Courts entered a default against General Motors Flint Assembly for failure to plead or otherwise defend. (Dkt. 68.) Because plaintiff did not properly serve General Motors Flint Assembly, that default is vacated.

Plaintiff also states that he attempted to serve Hydro Chem, but served a different company with that name. (Dkt. 6 at 2.) He has not attempted to serve the correct Hydro Chem since he was informed of that error in a letter sent by the wrongly-served Hyrdo Chem on May 27, 2016. (Dkt. 64 at 10.) Plaintiff has also not served Bobby Banks or Kevin Woodrum, but says that his motion to compel discovery concerns, in part, information needed to serve Banks. (*Id.* at 3.) However, plaintiff filed that motion on March 13, 2017, nearly ten months after he filed his complaint. Plaintiff has not shown that his failure to serve any defendant, including Banks and Woodrum – within either the 91-day period Michigan provides or the 120-day period the Federal Rules of Civil Procedure provided when he filed his suit – was for good cause. *See* Mich. Ct. R. 2.102(D), Fed. R. Civ. P. 4(m) (each requiring that a party show good cause for failure to serve a defendant).

Accordingly, the claims against Banks, Woodrum, Hydro Chem, and General Motors Flint Assembly are dismissed without prejudice based on plaintiff's failure to serve them with the summons and complaint.

### D. Plaintiff's Motion to Compel

Plaintiff has filed a motion to compel certain discovery from defendants, including the addresses of unserved defendants. (Dkt. 61.) Discovery has not yet begun in this case, so plaintiff's motion to compel is untimely. To the extent plaintiff requests information needed to serve the unserved defendants, his requests are both months late and not properly brought in a motion to compel discovery. Finally, all claims against all defendants have been dismissed, meaning no discovery could be compelled even if the motion were properly brought.

Accordingly, this motion is denied.

### IV. Conclusion

For the reasons set forth above, it is hereby ordered that:

The Aramark defendants' motion to dismiss (Dkt. 45) is GRANTED;

Beaugard and Bruton's motion to dismiss (Dkt. 36) is DENIED AS MOOT;

Plaintiff's motions to amend his complaint (Dkt. 53) and to compel discovery (Dkt. 61) are DENIED;

The entry of default against General Motors Flint Assembly (Dkt. 68) is VACATED;

All claims against Banks, Woodrum, Hydro Chem, and General Motors Flint Assembly are DISMISSED WITHOUT PREJUDICE; and

This case is DISMISSED.

IT IS SO ORDERED.

Dated: May 1, 2017
Ann Arbor, Michigan

s/Judith E. Levy
JUDITH E. LEVY
United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 1, 2017.

s/Felicia M. Moses
FELICIA M. MOSES
Case Manager